NOTICE OF ERRORS AND
OF CLARIFICATIONS: 5 CFR 1320.5,
#2:14-CR-00027-NDF         18 U.S.C. 3501 et seq.

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
'14 JUL 16 AM (duly reassitrialed)
STEPHAN HARRIS, CLERK
CHEYENNE

TO: Office of Presiding Judge
U.S. District Court
2120 Capitol Ave., 2nd Floor
Cheyenne 82001-3658
Wyoming, USA

DATE: 7/13/2014 A.D.

Greetings Your Honor and All Concerned:

My fourth meeting with Seattle U.S. Marshals now deserves further clarification, by way of demonstrating serious <u>defects</u> in Dr. C. Law's <u>methodology</u>. I am quite confident that the record already before the Court highly recommends the following <u>Findings of Fact and Conclusions of Law</u>:

(1) At that meeting, the Deputies and I reviewed at least two (2) <u>different revisions</u> of U.S. OPM Standard Form 61 ("SF-61");

(2) One SF-61 was an <u>earlier revision</u> which did display OMB control number <u>50-R0118</u>, and did display a paragraph citing 5 U.S.C. 2903;

— 1 of 4 —

Prosecutors are clearly entitled to immunity for initiating a prosecution. Whether the charges were false and whether the prosecutors knew they were false is irrelevant. An allegation that the prosecutors failed to make an independent investigation also falls within the scope of prosecutorial immunity.

*Governments > Federal Government > Employees & Officials*
*Civil Rights Law > Immunity From Liability > Local Officials > Customs & Policies*
*Torts > Public Entity Liability > Immunity > Judicial Immunity*

Lying and submitting a false affidavit after a trial has been concluded are not within the scope of prosecutorial immunity. These acts were not part of the presentation of the government's case nor of the judicial process. They do not involve the role of the prosecutors as advocates. They are instead actions taken for the personal benefit of the prosecutors to cover up their wrong doings. Although prosecutors are entitled to immunity for wrongs they may commit in the judicial process, they are not entitled to immunity for action taken to cover up these wrongs in order to avoid any possible personal liability.

*Governments > Federal Government > Employees & Officials*
*Civil Rights Law > Immunity From Liability > Local Officials > Customs & Policies*
*Torts > Public Entity Liability > Immunity > Judicial Immunity*

Prosecutorial immunity extends only to liability for damages. Prosecutors may still be liable for declaratory and injunctive relief.

*Civil Rights Law > General Overview*
*Civil Rights Law > Section 1983 Actions > Scope*
*Civil Rights Law > Conspiracy > Elements*

42 U.S.C.S. § 1985(3) is not a general federal tort law, but requires that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus.

*Civil Rights Law > General Overview*
*Civil Rights Law > Section 1983 Actions > Scope*
*Civil Rights Law > Conspiracy > Elements*

A claim of conspiracy under 42 U.S.C.S. § 1985(3) requires a deprivation of some right or privilege created by the Constitution or other provisions of federal law. The rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere.

*Civil Rights Law > General Overview*
*Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Scope of Freedom*
*Torts > Intentional Torts > Defamation > Defenses > Fair Comment & Opinion*

Racial prejudice and disagreement with political opinions cannot be sufficient bases for official action. The deprivation of these constitutional rights, if it can be proved, would entitle a plaintiff to nominal damages, if to no other form of relief. By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed.

*Civil Rights Law > Section 1983 Actions > Scope*
*Civil Rights Law > Conspiracy > Elements*

10CASES 5

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

44202086

(3) The other was a <u>later</u> <u>revision</u> which did <u>not</u> display any OMB control number, and which did <u>not</u> display any paragraph citing 5 U.S.C. 2903 (authority to administer);

(4) Those Deputies stated to Dr. Law their belief that an OMB control number was <u>no longer needed</u>;

(5) Those Deputies did <u>not</u> bring to our fourth meeting any <u>proof</u> of their belief that an OMB control number was no longer needed;

(6) In his subsequent email to me, Deputy Mans wrote saying, "We simply offered a possible path of inquiry....." [sic];

(7) I accepted that offer as <u>bona fide</u>, and I promptly contacted <u>both</u> OPM and OMB for the Application required by <u>5 CFR 1320.5</u>;

(8) Both OPM <u>and</u> OMB both replied in writing to say there was <u>no</u> Application from OPM for periodic OMB review and approval of the electronic SF-61 then published at OPM's Internet website;

(9) I then documented both admissions in a NOTICE OF MISSING AND/OR DEFECTIVE CREDENTIALS filed in <u>Hedges et al. v. Obama et al.</u> (USDC/SDNY);

— 2 of 4 —

*Civil Rights Law > Conspiracy > Knowing Nonprevention*
*Criminal Law & Procedure > Criminal Offenses > Inchoate Crimes > Conspiracy > Elements*



Under 42 U.S.C.S. § 1986, any person who has knowledge of a 42 U.S.C.S. § 1985 conspiracy and has the power to prevent or aid in preventing the commission of the conspiracy, and does not, may be liable to the party injured.

*Civil Rights Law > Section 1983 Actions > Scope*
*Civil Procedure > Declaratory Judgment Actions > Federal Judgments > General Overview*
*Civil Rights Law > Section 1983 Actions > Educational Institutions*
*Civil Rights Law > Section 1983 Actions > Elements > Color of State Law > General Overview*
*Governments > Federal Government > Claims By & Against*
*Governments > Federal Government > Employees & Officials*

Federal officials ordinarily are not suable under 42 U.S.C.S. § 1983, which requires action under color of state law, but they may be liable under § 1983 where they are charged with conspiring with state officers or employees.

*Governments > Federal Government > Claims By & Against*
*Civil Rights Law > Immunity From Liability > Local Officials > Customs & Policies*
*Civil Rights Law > Immunity From Liability > General Overview*
*Torts > Public Entity Liability > Immunity > General Overview*

The United States Department of Justice is not a juridical entity separate from the United States or the individual officers and employees who direct and work for it. The same is true of the Federal Bureau of Investigation. The United States has not waived its sovereign immunity for constitutional torts as such. However desirable a direct remedy against the government might be as a substitute for individual official liability, the sovereign still remains immune to suit.

*Governments > Local Governments > Claims By & Against*
*Governments > Local Governments > Employees & Officials*

The "City of Denver Police Department" is not a separate suable entity.

*Civil Rights Law > Immunity From Liability > Local Officials > Customs & Policies*

Governmental entities are not entitled to any sort of immunity under 42 U.S.C.S. § 1983.

Opinion    *for federal citizens ONLY: see Wadleigh*

Opinion-by:    ARNOLD

Opinion    *v. Newhart*

*(10th Cir. 1985)*

{771 F.2d 431} ARNOLD, Circuit Judge

Francisco Eugenio Martinez, known as "Kiko," appeals from the District Court's dismissal of his civil-rights complaint. Martinez claims the defendants deprived him of his civil and constitutional rights, conspired to "get Kiko," and tried to "railroad" him into prison on unsubstantiated criminal

10CASES                                    6

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(10) From the facts stated above, the following conclusions are reasonable, and justified:

(a) the Deputies erred by basing their inference on a more recent revision number;

(b) the Deputies erred by failing to base their inference on statements issued by OPM and OMB;

(c) statements later issued by OPM and OMB did directly contradict the Deputies' inference;

(d) I did the procedurally correct thing by contacting both OPM and OMB for clarification;

(e) the Deputies did the procedurally <u>in</u>correct thing by failing to contact either OPM or OMB for clarification;

(f) the Deputies' offer, and my acceptance of that offer—as demonstrated by my FOIA requests to OPM and OMB—are verified <u>facts</u> and <u>not</u> false beliefs, and particularly <u>not</u> false beliefs that <u>persist psychotically</u>;

(g) it is more accurate to conclude that the Deputies have maintained a false belief about the missing OMB control numbers; and,

(h) there is no evidence, currently in the Court's official records, to indicate the Deputies' false belief <u>persisted psychotically</u>, however;

charges. He asserts claims based on 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, the First, Fourth, Fifth, Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments to the United States Constitution, unspecified sections of the Constitution {771 F.2d 432} of the State of Colorado, common-law tort actions including false arrest, false imprisonment, malicious abuse of process, harassment, gross misconduct, outrageous conduct, and negligence, and violations of the Code of Judicial Conduct and the Code of Professional Responsibility for lawyers. He seeks damages, an injunction, and declaratory relief. The principal defendant is Fred M. Winner, at all relevant times Chief Judge of the United States District Court for the District of Colorado, who presided over plaintiff's trial in 1981 for mailing a letter bomb.

The District Court held that Judge Winner and the federal prosecutors were entitled to immunity from liability for damages for their acts, and that declaratory and injunctive relief were not available in this case. The judge and the federal prosecutors were dismissed from the case, as no relief could be granted against them. The causes of action under 42 U.S.C. §§ 1981, 1985, 1986, and 1988 were dismissed as either inapplicable or because no claim was stated under them. The claims against the remaining defendants were dismissed under Fed. R. Civ. P. 8(a) and 12(b)(6). 1 Martinez was given 20 days to correct the deficiencies in the complaint, but he chose to stand on the complaint as filed. The dismissal of his complaint was therefore with prejudice.

We hold that Judge Winner is absolutely immune from any claim for damages, and that injunctive and declaratory relief against him would serve no purpose. He has left office. As to the other defendants, we affirm in part and reverse in part.

I.

Martinez's complaint arises out of criminal actions against him in both state and federal courts for the possession and mailing of three letter bombs. In 1973 the United States Attorney's office for the District of Colorado decided to prosecute Martinez for possession of unregistered explosives and the sending of explosives through the United States mails. Martinez fled the jurisdiction and did not return until 1980, when he was arrested by federal authorities. The charges in the indictment were split; each of three mail-bomb incidents was tried separately. In 1980 the Denver District Attorney's office also charged Martinez with crimes involving bombing attempts. These state charges were later dismissed upon motion of the prosecution.

During the first trial highly improper conduct occurred. The facts are summarized in this Court's decision in *United States v. Martinez*, 667 F.2d 886, 887-88 (10th Cir. 1981), *cert. denied*, 456 U.S. 1008, 102 S. Ct. 2301, 73 L. Ed. 2d 1304 (1982). In stating the facts we draw also on the complaint, which we must take as true for present purposes. During the middle of the first trial the presiding judge, Judge Winner, held a secret meeting in his hotel room. Present at the meeting were two Assistant United States Attorneys, three Deputy United States Marshals, the Judge's second secretary, who was also a deputy clerk of the District Court, and some witnesses for the prosecution. Neither defendant nor his counsel were notified about this meeting. Judge Winner expressed apprehension that the jury was being intimidated by spectators, and that Martinez might be acquitted. He wanted hidden cameras installed to record the intimidation, which he felt was an obstruction of justice. It was agreed at the meeting that a mistrial would be declared, so as to give the government another chance to convict Martinez before another jury. Judge Winner's thought was that the prosecutors should not move for a mistrial until after the defense had presented its case, so that the goverment [sic] could be informed as to defense strategies. The judge further stated that he could provoke counsel for defendant into requesting a mistrial. One witness, also a defendant here, Officer Tyus of the City of Denver Police Department, {771 F.2d 433} suggested that he could cause a mistrial by giving improper and prejudicial testimony that had previously been ruled inadmissible.

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

44202086

In a separate matter, I erred by saying I had transmitted 20,000 email messages to U.S. Coast Guard Investigations during the seven (7) years of my pro bono assistance to them. The correct number is approximately 2,000. During those 7 years, it is accurate to say I transmitted a TOTAL of 20,000 email messages from the computer workstations in my small office/home office ("SOHO"), approximately. I hope this helps. Thank you.

Respectfully submitted in good faith,

Paul Andrew Mitchell (chosen name*)

/s/ Paul Andrew Mitchell, B.A., M.S.

Citizen of Washington State, Pannill v. Roanoke,
Relator In Propria Persona, 28 U.S.C. 1654;
Private Attorney General, 18 U.S.C. 1964,
Rotella v. Wood, 528 U.S. 549 (2000)
(objectives of civil RICO)

All Rights Reserved (cf. UCC 1-308)

* See Doe v. Dunning, 549 P.2d 1 (Washington State Supreme Court)

— 4 of 4 —

The reason given for not inviting defendant's counsel to the meeting was the court's suspicion (unverified on the record) that one of defendant's counsel might be involved in the supposed conspiracy to intimidate the jury.

The next morning, the government announced that it no longer opposed the motion for mistrial that had been made the previous day by defendant and denied. Defense counsel asked why the government had changed its position, and, according to the complaint, an Assistant United States Attorney replied, falsely, that the government was willing to consent to a mistrial because one of the jurors had become ill. The defense then joined in the motion, and a mistrial was declared. Judge Winner and the government had apparently thought it important to induce defense counsel to join in the mistrial motion, so as to avoid a later claim of double jeopardy.

In *United States v. Martinez, supra*, we held that the government's misrepresentation of its grounds for seeking a mistrial and its failure to inform the defense of the hotel-room meeting barred retrial as to the first letter-bomb mailing under the Double Jeopardy Clause. *Id.* at 889-90. Martinez was then tried for a second alleged mailing of a letter bomb, and this time he was acquitted by the jury. The United States then prosecuted him for the third alleged letter-bomb mailing. We held that this prosecution was not barred by the government's apparently negligent destruction of physical evidence, but that the prosecution could not, in the course of the third trial, introduce evidence of the first two alleged bombings as similar crimes or acts. *United States v. Martinez*, 744 F.2d 76, 80 (10th Cir. 1984). On remand, the District Court dismissed the third charge on motion of the government, which apparently believed that it lacked sufficient evidence to convict, in view of our holding ruling out evidence of the first two bombings. *United States v. Martinez*, No. 73-CR-414 (D. Colo. Nov. 30, 1984) (order dismissing remaining counts).

We now summarize the remaining allegations of the complaint before us on this appeal. (Additional details will be given as plaintiff's theories against the various defendants are discussed.) Martinez alleges that there was a "get Kiko" conspiracy on the part of state and federal law-enforcement agencies, Judge Winner, and others. Plaintiff, a lawyer, says that he was actively using his legal skills to promote the assertion of rights by Mexicanos and other "oppressed" national minorities, including Native Americans. As a result of these activities, and because he himself was a Mexicano, he alleges that law-enforcement agencies conspired to harass and oppress his political and social activism. He claims they carried out unlawful surveillance and investigations, kept a dossier on him, received and passed on information, and issued malicious and inflammatory press releases. He says that false charges were brought against him, charges known to the prosecution to be false, and that the defendants tried to "railroad" him to jail. The "railroading" charge has particular reference to the hotel-room meeting, the details of which we have already described. As a result of these activities, Martinez alleges that numerous constitutional violations occurred and that many common-law torts were committed against him.

Because this appeal comes to us from a Rule 12(b)(6) dismissal for failure to state a claim, we take the well-pleaded allegations of the complaint as true. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972). And under the liberal pleading rules set out in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" (footnote omitted).

II.

Martinez's complaint seeks to allege many claims against many defendants. {771 F.2d 434} The clearest way to describe these claims and our disposition of them, we think, is to take each of the defendants or groups of defendants in turn. We will begin with Judge Winner, because the question

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

44202086

INMATE NAME: Modeleski, M.P. (given name)
SCOTTS BLUFF COUNTY DETENTION CENTER
PO BOX 130
GERING, NE 69341-0130

#45396

*SBCDC Disclaims Any Responsibility For
The Nature of the Content of this Correspondence*

LEGAL MAIL

TO: Office of Presiding Judge
U.S. District Court
2120 Capitol Ave., 2nd Floor
Cheyenne 82001-3658
Wyoming, USA

Re:
#2:14-CR-00027-NDF-2

All Rights Reserved
(c.f. UCC 1-308)

82001$3633