**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2014 JUL 24  PM 2 06

STEPHAN HARRIS, CLERK
CASPER

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**JOSEPH RUBEN HILL**
(Counts 1 - 6),
**MITCHELL PAUL MODELESKI, aka
Paul Andrew Mitchell**
(Counts 1- 6),
**LUCILLE KATHLEEN HILL**
(Count 1),
**LAWRENCE KEVIN PAILLE**
(Count 1),
**STEPHANIE LENORE MACIEL**
(Counts 1 and 2),

and

**GLORIA JEAN REEDER**
(Counts 1 and 2),

Defendants.

**No.**     **14-CR-27-F**

**Ct. 1:**   **18 U.S.C. § 371**
(Conspiracy to Defraud the United
States)

**Ct. 2:**   **18 U.S.C. § 1512(k)**
(Conspiracy to Obstruct Justice)

**Cts. 3-6: 18 U.S.C. §§ 1512(b)(2)(A) and 2**
(Obstruction of Justice and Aiding
and Abetting)

**S U P E R C E D I N G   I N D I C T M E N T**

THE GRAND JURY CHARGES THAT:

**INTRODUCTION**

1.     The Internal Revenue Service (IRS) is an agency of the United States Department

of the Treasury, responsible for administering and enforcing the tax laws of the United States.

The Internal Revenue Code established laws for the taxation of income. Under these laws,

individuals, partnerships, and corporations are required to report income to the IRS on income

tax returns.  Under the Internal Revenue Code, income is taxable to the person who earns it.

2.      Beginning on or about April 1, 1997, in Lakewood, Colorado, using the name "The Creative Consultants" (TCC), Defendants **JOSEPH RUBEN HILL (J. HILL)** and **LUCILLE KATHLEEN HILL (K. HILL)**, devised, organized, promoted, and sold a system of trusts and trust services ("Pure Trust Organizations") designed to conceal and disguise assets and income from the IRS.  Later, on or about July 11, 2000, in Cheyenne, Wyoming, **J. HILL** and **K. HILL** changed TCC's name to the "Creative Consulting Group" (CCG).  In 2000, they also changed the name of the trusts and trust services from "Pure Trust Organizations" to "American Business Trusts" and "International Business Trusts."  TCC and CCG trusts and trust services falsely represent that the trusts they created are "foreign," do not involve "the conduct of a trade or business in the United States," and are not subject to the Internal Revenue Code, despite the fact that income was earned, and assets held, in the United States.  Indeed, the fraudulent trust scheme created and used false taxpayer identification numbers to open client's accounts at banks within the United States.

3.      Defendant **LAWRENCE KEVIN PAILLE (PAILLE)**, residing in the area of Sedona, Arizona, became a representative of CCG on or about December 13, 2005, and began working with **J. HILL** and **K. HILL** in promoting the CCG fraudulent trust scheme.  On or about December 27, 2005, **PAILLE** purchased and began using CCG trusts to conceal assets and income from the IRS.

4.      Defendant **GLORIA JEAN REEDER (REEDER)**, residing in Sedona, Arizona, became a representative of CCG on or about January 10, 2006, and began working with **J. HILL** and **K. HILL** in promoting the CCG fraudulent trust scheme.  On or about February 5, 2006, **REEDER** purchased and began using CCG trusts to conceal assets and income from the IRS.

5.      Defendant **STEPHANIE LENORE MACIEL (MACIEL)**, residing in Sedona, Arizona, purchased and began using CCG trusts to conceal assets and income from the IRS on or

about November 14, 2006. On or about April 29, 2008, **MACIEL** became a representative of CCG and began working with **J. HILL** and **K. HILL** in promoting the CCG fraudulent trust scheme.

6.      Amanda Bryn Erin Campbell, an unindicted coconspirator residing in Arvada, Colorado, became a representative of CCG on or about December 28, 2007, and thereafter worked with **J. HILL** and **K. HILL** in promoting the CCG fraudulent trust scheme.

7.      On or about February 27, 2009, IRS-Criminal Investigation began investigating the TCC and CCG fraudulent trust scheme. As part of that investigation, CCG clients were subpoenaed to produce records, documents and other materials to a grand jury impanelled by the United States District Court for the District of Wyoming.

8.      Defendant **MITCHELL PAUL MODELESKI (MODELESKI)**, using the name Paul Andrew Mitchell, called himself a "Private Attorney General" with the "Supreme Law Firm." **MODELESKI** operated the "Supreme Law Firm" out of a rented one-bedroom apartment in Seattle, Washington, and he claimed the firm's specialty was in constitutional law and had a mission to "dismantle the IRS." **MODELESKI** is not licensed to practice law.

9.      From on or about October 4, 2012, through on or about April 25, 2013, **MODELESKI, J. HILL, REEDER**, and **MACIEL** worked together to obstruct and impede the IRS criminal investigation and the grand jury investigation by directing CCG clients to not cooperate with IRS special agents, to send frivolous and misleading material to IRS special agents, court personnel and the grand jury, and to withhold records, documents and other objects from the grand jury.

10.      Paragraphs 1 through 9 are re-alleged and incorporated in Counts One through Six.

## COUNT ONE

From on or about April 1, 1997, through on or about January 28, 2014, in the District of Wyoming and elsewhere, the Defendants, **JOSEPH RUBEN HILL, LUCILLE KATHLEEN HILL, LAWRENCE KEVIN PAILLE, STEPHANIE LENORE MACIEL, GLORIA JEAN REEDER,** and **MITCHELL PAUL MODELESKI, aka Paul Andrew Mitchell,** knowingly and unlawfully combined, conspired, confederated and agreed with others, both known and unknown to the grand jury, to defraud the United States for the purpose of impeding, impairing, obstructing and defeating the lawful functions of the Internal Revenue Service of the Department of the Treasury in the due administration of the internal revenue laws and in the ascertainment, computation, assessment, and collection of federal income taxes.

### Manner and Means of the Conspiracy

1.     It was part of the conspiracy that the Defendants devised, organized, promoted and sold a system of trusts and trust services to clients of TCC and CCG. The purpose and effect of the TCC/CCG trust systems was to defraud the United States of America by attempting to fraudulently conceal trust purchasers' assets and income from the IRS and to illegally reduce or eliminate their income tax liability.  In all, at least 200 clients purchased TCC/CCG trusts and trust services, using them to conceal assets and income from the IRS, which resulted in a tax loss to the United States of at least $1.4 million.

2.     It was a further part of the conspiracy that Defendants used TCC and CCG to promote, sell, and cause to be sold trusts (also known as "Pure Trust Organizations," "American Business Trusts," and "International Business Trusts") and trust services, primarily to self-employed individuals.  As part of the TCC and CCG scheme, the clients used their trusts to engage in a series of sham paper transactions having no economic substance or legitimate

business purpose which resulted in the concealment of assets and income from the IRS and the attempted illegal reduction or elimination of income tax liability.

3.     It was a further part of the conspiracy that Defendants and their associates conducted seminars and webinars and distributed TCC and CCG promotional materials in order to recruit clients. Defendants then sold trusts and trust services to these clients, falsely advising them that their trusts could, among other things, be used to reduce or eliminate federal income taxes and protect assets from the collection of tax debt.

4.     It was a further part of the conspiracy that Defendants counseled and assisted their clients in transferring the clients' businesses, homes, and other assets into trusts, or into bank accounts corresponding to trusts, to avoid the computation, assessment, and collection of federal income tax. Defendants further counseled and assisted their clients in making it appear they had passed their business income through a purportedly "foreign" TCC/CCG trust which ultimately paid little or no taxes.

5.     It was a further part of the conspiracy that Defendants charged clients substantial fees for TCC/CCG trusts, trust services, and for advice and counsel from one or more of the Defendants on the use of these trusts to conceal assets and income from the IRS and to reduce or eliminate the clients' income tax liabilities.

6.     It was a further part of the conspiracy that the trusts designed by Defendants had nominee trustees, frequently including Defendants or close friends and family. At virtually the same time, or even before, a client transferred assets and/or income to a trust, the nominee trustee would "resign" via a boilerplate document, thus allowing the TCC/CCG client to appoint a new trustee and ultimately giving the client effective management and control of the assets in the trust and the trust's bank accounts, as well as the full use and benefit of the income passed through the trust.

7.     It was a further part of the conspiracy that the Defendants concealed from the IRS their own assets and income from the sale and management of their fraudulent trust scheme by failing to file or failing to timely file federal income tax returns, and by failing to report their true income to the IRS.

8.     It was a further part of the conspiracy that the Defendants concealed, misrepresented and hid, and caused to be concealed, misrepresented and hidden, the existence, purpose, and acts done in furtherance of the conspiracy.

### Overt Acts in Furtherance of the Conspiracy

To effect the objects of the conspiracy and accomplish its purpose, the Defendants' overt acts included, but were not limited to, the following:

1.     On April 1, 1997, **J. HILL** signed a document relating to the Powers and Authority of TCC Pure Trust Organization (PTO), an entity he owned and controlled.

2.     On September 22, 1998, **K. HILL** signed a Notice of Assignment of Trust Identification Number for TCC.

3.     On January 9, 1999, **J. HILL** and **K. HILL** signed an agreement for the purchase of a 1995 Ford Taurus, using Purple Feather Holdings PTO.

4.     On May 15, 2000, **J. HILL** changed the mailing address for TCC from a location in Lakewood, Colorado, to a location in Cheyenne, Wyoming.

5.     On July 11, 2000, **J. HILL** and **K. HILL** signed documents creating CCG, an International Business Trust (IBT), giving them "full authority and power of executing agreements and or contracts, conducting any business, and endorsing checks … ."

6.     On September 16, 2002, **J. HILL** and **K. HILL** signed trust documents for Pine Ridge Holdings trust to conceal CCG client T.O.'s assets from the IRS.

7.      On or about November 30, 2004, **J. HILL** created Glacier Mountain Holdings trust to conceal CCG clients B.A.'s and P.A.'s assets from the IRS.

8.      On August 24, 2005, **J. HILL** signed IRS Form W8-IMY for TCC, falsely stating the trust does not involve "the conduct of a trade or business in the United States" and using a fabricated foreign tax identifying number.

9.      On or about August 25, 2005, **J. HILL** and **K. HILL** opened a checking account for TCC using a fabricated taxpayer identification number.

10.     On December 9, 2005, **J. HILL** executed a grant deed to Windy Ranch Holdings trust transferring ownership of real property in Cheyenne, Wyoming, the purpose of which was to conceal his assets from the IRS.

11.     On December 27, 2005, **PAILLE** mailed a completed IBT information form and a check to **J. HILL** to purchase CCG structuring services relating to three LLC's and six CCG trusts.

12.     On January 10, 2006, **PAILLE** sent an email to **J. HILL** regarding arrangements made with **REEDER** for a seminar to promote the CCG trust scheme in Sedona, Arizona.

13.     On January 11, 2006, **PAILLE** opened a bank account in the name of Rocket Enterprises ABT using a fabricated taxpayer identification number.

14.     On February 5, 2006, **REEDER** paid $4,750 to CCG for trusts Two for Tango Ventures, Black Coral Holdings, and Cornucopia Enterprises, which she used to conceal assets and income from the IRS.

15.     On February 17 and 18, 2006, **J. HILL, PAILLE, REEDER,** and a person known to the grand jury conducted a CCG seminar in Sedona, Arizona to promote and sell CCG trusts and trust services.

16.     On February 22, 2006, **REEDER** opened a bank account in the name of Cornucopia Enterprises trust using a fabricated taxpayer identification number.

17.     On March 22, 2006, **REEDER** signed IRS Form W8-IMY for CCG client E.H., falsely stating the trust does not involve "the conduct of a trade or business in the United States" and using a fabricated foreign tax identifying number.

18.     On or about June 16, 2006, **J. HILL** and **PAILLE** conducted a CCG seminar in Colorado to promote and sell CCG trusts and trust services.

19.     On August 8, 2006, **J. HILL** executed a grant deed to Windy Ranch Holdings trust transferring ownership of real property in Wheatland, Wyoming, for the purpose of concealing his assets from the IRS.

20.     On September 11, 2006, **J. HILL** sent an email to CCG client P.A. instructing the client how to use the client's CCG trust to conceal assets from the IRS.

21.     On November 14, 2006, **MACIEL** paid $3,000 to CCG for two limited liability companies and Enlightened Enterprises trust, which she used to conceal assets and income from the IRS.

22.     On or about November 21, 2006, **PAILLE** created a spreadsheet containing eight pages of procedures and explaining how CCG generates fabricated taxpayer identification numbers.

23.     On November 28, 2006, **PAILLE** and **J. HILL** signed trust documents for Enlightened Enterprises to conceal **MACIEL**'s assets and income from the IRS.

24.     On December 28, 2006, **J. HILL** sent an email to **REEDER** instructing her to consider referring potential CCG clients to **PAILLE**.

8

25.     On March 1, 2007, **MACIEL** signed IRS Form W8-IMY for Enlightened Enterprises, falsely stating the trust does not involve "the conduct of a trade or business in the United States" and using a fabricated foreign tax identifying number.

26.     On April 3, 2007, **PAILLE** signed IRS Form W8-IMY for CCG clients J.B. and N.B., falsely stating their trust does not involve "the conduct of trade or business in the United States" and using a fabricated foreign tax identifying number.

27.     On or about April 16, 2007, **PAILLE** and CCG clients J.B. and N.B. opened a bank account in the name of the clients' trust, using a fabricated taxpayer identification number.

28.     On or about August 4, 2007, **J. HILL** conducted a CCG seminar in Aurora, Colorado to promote and sell CCG trusts and trust services.

29.     On or about April 18, 2008, **J. HILL** and Campbell conducted a CCG seminar in Colorado Springs, Colorado to promote and sell CCG trusts and trust services.

30.     On or about April 29, 2008, **MACIEL** referred CCG client J.H. to **J. HILL.**

31.     On May 17, 2008, **J. HILL** and Campbell conducted a CCG seminar in Carlsbad, California to promote and sell CCG trusts and trust services.

32.     On May 18, 2008, **PAILLE** and **J. HILL** exchanged emails about changing the method of fabricating taxpayer identification numbers.

33.     On September 4, 2008, **J. HILL** signed IRS Form W8-IMY for CCG, falsely stating the trust does not involve "the conduct of a trade or business in the United States" and using a fabricated foreign tax identifying number.

34.     On or about September 4, 2008, **J. HILL, K. HILL, PAILLE,** and Campbell opened a checking account for CCG using a fabricated taxpayer identification number.

35.     On November 4, 2008, **J. HILL** sent **REEDER** an email directing her to obstruct IRS's audit by making misleading statements to conceal her assets and income.

36.     On or about November 4, 2008, **REEDER** sent the IRS a letter containing misleading statements about her CCG trust.

37.     On November 12, 2008, **J. HILL** sent an email to **REEDER** and **PAILLE** instructing **REEDER** to clear out a bank account the IRS had discovered by withdrawing "numerous $2K-$3K bank certified checks" made out to one of her CCG-created trusts or to cash.

38.     On November 12, 2008, **J. HILL** sent an email to **REEDER** and **PAILLE** instructing **REEDER** how to respond to the IRS about her CCG trust.

39.     On or about February 21, 2009, **J. HILL** and Campbell conducted a CCG seminar in Castle Rock, Colorado to promote and sell CCG trusts and trust services.

40.     On June 2, 2009 and July 2, 2009, **J. HILL** and Campbell conducted Webinars (online seminars) to promote and sell CCG trusts and trust services.

41.     On December 18, 2009, **J. HILL** sent an email to **K. HILL, PAILLE,** Campbell and CCG clients instructing them how to transfer funds from trust bank accounts in order to conceal assets and income from the IRS.

42.     On June 28, 2010, **PAILLE** sent an email to **J. HILL** with an attached letter for **REEDER** to submit to the IRS for the purpose of obstructing her audit.

43.     On June 29, 2010, **J. HILL** sent an email to **REEDER** with an attached letter for **REEDER** to submit to the IRS for the purpose of obstructing her audit.

44.     On March 14, 2012, **J. HILL** sent an email to **PAILLE, REEDER, MACIEL,** Campbell, and CCG clients instructing them to not cooperate with IRS special agents.

45.     On October 4, 2012, **J. HILL** sent an email to **MODELESKI** requesting his assistance in obstructing and impeding the IRS criminal investigation and the grand jury investigation of the TCC/CCG trust scheme.

46.     On October 9, 2012, **J. HILL** mailed a $500 payment to **MODELESKI.**

47.     On October 12, 2012, **MODELESKI** shipped **J. HILL** frivolous and misleading material designed to obstruct and impede the criminal and grand jury investigations.

48.     On October 14, 2012, **J. HILL** sent an email to **PAILLE, REEDER, MACIEL,** Campbell, and other CCG clients, forwarding **MODELESKI**'s frivolous and misleading material designed to obstruct and impede the criminal and grand jury investigations.

49.     On October 15, 2012, at **MODELESKI**'s direction, **J. HILL** signed and mailed to IRS special agents frivolous material designed to obstruct and impede the criminal and grand jury investigations.

50.     On December 18, 2012, **J. HILL** sent an email to **PAILLE, REEDER, MACIEL,** Campbell, and CCG clients instructing them how to obstruct and impede the criminal and grand jury investigations.

51.     On or about December 20, 2012, **J. HILL** directed **MACIEL** to scan and email to him grand jury subpoenas that were served on her and other CCG clients.

52.     On December 20, 2012, **MACIEL** scanned and emailed to **J. HILL** grand jury subpoenas that were served on her and a CCG client.

53.     On December 29, 2012, **J. HILL** emailed several CCG clients soliciting funds to pay for **MODELESKI**'s assistance in obstructing and impeding the criminal and grand jury investigations.

54.     On December 31, 2012, **J. HILL** sent an email to CCG client R.M. stating, "What we are NOT doing is sending ... [the] ... the documents" requested by the grand jury.

55.     On January 13, 2013, **J. HILL** sent an email with attachments to **REEDER,** instructing her to prepare and send frivolous material to the grand jury.

56.     On January 13, 2013, **J. HILL** sent an email with attachments to **MACIEL**, instructing her to prepare and send frivolous material to the grand jury.

57.     On January 13, 2013, **J. HILL** sent an email with attachments to **PAILLE**, instructing him to prepare and send frivolous material to the grand jury.

58.     On April 24, 2013, **MACIEL**, made false statements to IRS special agents by denying she withheld documents from the grand jury.

59.     On April 24, 2013, **REEDER**, made false statements to IRS special agents by denying any knowledge of her CCG trusts, and denying she withheld documents from the grand jury.

All in violation of 18 U.S.C. § 371.

## COUNT TWO

From on or about October 4, 2012, through on or about April 25, 2013, in the District of Wyoming and elsewhere, the Defendants, **JOSEPH RUBEN HILL, MITCHELL PAUL MODELESKI, aka Paul Andrew Mitchell, STEPHANIE LENORE MACIEL,** and **GLORIA JEAN REEDER,** did knowingly and intentionally combine, conspire, confederate and agree together and with others to corruptly obstruct, influence and impede the grand jury, an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), and to corruptly persuade and engage in misleading conduct toward persons known to the grand jury with intent to cause and induce such persons to withhold records, documents and other objects from the grand jury, an official proceeding, in violation of 18 U.S.C. § 1512(b)(2)(A).

Overt Acts 45 through 59 of Count One are re-alleged and incorporated.

All in violation of 18 U.S.C. § 1512(k).

12

## COUNT THREE

From on or about December 18, 2012, through on or about April 25, 2013, in the District of Wyoming and elsewhere, the Defendants, **JOSEPH RUBEN HILL** and **MITCHELL PAUL MODELESKI, aka Paul Andrew Mitchell**, did knowingly and corruptly persuade and engage in misleading conduct toward CCG client P.B., a person known to the grand jury, with intent to cause and induce P.B. to withhold records, documents and other objects from the grand jury, an official proceeding, and the Defendants did knowingly aid and abet each other in the commission of said offense.

In violation of 18 U.S.C. §§ 1512(b)(2)(A) and 2.

## COUNT FOUR

From on or about December 18, 2012, through on or about April 24, 2013, in the District of Wyoming and elsewhere, the Defendants, **JOSEPH RUBEN HILL** and **MITCHELL PAUL MODELESKI, aka Paul Andrew Mitchell**, did knowingly and corruptly persuade and engage in misleading conduct toward CCG client J.H., a person known to the grand jury, with intent to cause and induce J.H. to withhold records, documents and other objects from the grand jury, an official proceeding, and the Defendants did knowingly aid and abet each other in the commission of said offense.

In violation of 18 U.S.C. §§ 1512(b)(2)(A) and 2.

## COUNT FIVE

From on or about December 18, 2012, through on or about April 24, 2013, in the District of Wyoming and elsewhere, the Defendants, **JOSEPH RUBEN HILL** and **MITCHELL PAUL MODELESKI, aka Paul Andrew Mitchell**, did knowingly and corruptly persuade and engage in misleading conduct toward CCG client R.M., a person known to the grand jury, with intent to cause and induce R.M. to withhold records, documents and other objects from the grand jury, an

official proceeding, and the Defendants did knowingly aid and abet each other in the commission of said offense.

In violation of 18 U.S.C. §§ 1512(b)(2)(A) and 2.

## COUNT SIX

From on or about December 18, 2012, through on or about April 24, 2013, in the District of Wyoming and elsewhere, the Defendants, **JOSEPH RUBEN HILL** and **MITCHELL PAUL MODELESKI, aka Paul Andrew Mitchell**, did knowingly and corruptly persuade and engage in misleading conduct toward CCG client C.T., a person known to the grand jury, with intent to cause and induce C.T. to withhold records, documents and other objects from the grand jury, an official proceeding, and the Defendants did knowingly aid and abet each other in the commission of said offense.

In violation of 18 U.S.C. §§ 1512(b)(2)(A) and 2.

A TRUE BILL:


Inked Signature on File in Clerk's Office
FOREPERSON


CHRISTOPHER A. CROFTS
United States Attorney

## PENALTY SUMMARY
### 14-CR-27-F

| | | |
|---|---|---|
| **DEFENDANT NAME:** | | **JOSEPH RUBEN HILL** |
| **DATE:** | | July 22, 2014 |
| **INTERPRETER NEEDED:** | | No |
| **PLACE OF TRIAL:** | | **Cheyenne** |
| **VICTIM:** | | No |
| **SEAL CASE:** | | No |
| **OFFENSE:** | **Ct. 1:** | **18 U.S.C. § 371**<br>(Conspiracy to Defraud the United States) |
| **PENALTIES:** | | NMT 5 Years of Imprisonment<br>$250,000 Fine<br>3 Years Supervised Release<br>$100 Special Assessment |
| **OFFENSE:** | **Ct. 2:** | **18 U.S.C. § 1512(k)**<br>(Conspiracy to Obstruct Justice) |
| **PENALTIES:** | | NMT 20 Years of Imprisonment<br>$250,000 Fine<br>3 Years Supervised Release<br>$100 Special Assessment |
| **OFFENSE:** | **Cts. 3-6:** | **18 U.S.C. §§ 1512(b)(2)(A) and 2**<br>(Obstruction of Justice and Aiding and Abetting) |
| **PENALTIES:** | | NMT 20 Years of Imprisonment<br>$250,000 Fine<br>3 Years Supervised Release<br>$100 Special Assessment |
| **TOTAL:** | | 105 Years of Imprisonment<br>$1,500,000 Fine<br>3 Years Supervised Release<br>$600 Special Assessment |
| **AGENT:** | | James Marcy, IRS-CID |
| **AUSA:** | | L. Robert Murray |
| **ESTIMATED TIME OF TRIAL:** | | 4-6 weeks |
| **WILL THE GOVERNMENT SEEK DETENTION IN THIS CASE:** | | No |
| **ARE THERE DETAINERS FROM OTHER JURISDICTIONS:** | | No |

## PENALTY SUMMARY
### 14-CR-27-F

| | | |
|---|---|---|
| **DEFENDANT NAME:** | | **MITCHELL PAUL MODELESKI, aka**<br>**Paul Andrew Mitchell** |
| **DATE:** | | July 22, 2014 |
| **INTERPRETER NEEDED:** | | No |
| **PLACE OF TRIAL:** | | **Cheyenne** |
| **VICTIM:** | | No |
| **SEAL CASE:** | | No |
| **OFFENSE:** | **Ct. 1:** | **18 U.S.C. § 371**<br>(Conspiracy to Defraud the United States) |
| **PENALTIES:** | | NMT 5 Years of Imprisonment<br>$250,000 Fine<br>3 Years Supervised Release<br>$100 Special Assessment |
| **OFFENSE:** | **Ct. 2:** | **18 U.S.C. § 1512(k)**<br>(Conspiracy to Obstruct Justice) |
| **PENALTIES:** | | NMT 20 Years of Imprisonment<br>$250,000 Fine<br>3 Years Supervised Release<br>$100 Special Assessment |
| **OFFENSE:** | **Cts. 3-6:** | **18 U.S.C. §§ 1512(b)(2)(A) and 2**<br>(Obstruction of Justice and Aiding and Abetting) |
| **PENALTIES:** | | NMT 20 Years of Imprisonment<br>$250,000 Fine<br>3 Years Supervised Release<br>$100 Special Assessment |
| **TOTAL:** | | 105 Years of Imprisonment<br>$1,500,000 Fine<br>3 Years Supervised Release<br>$600 Special Assessment |
| **AGENT:** | | James Marcy, IRS-CID |
| **AUSA:** | | L. Robert Murray |
| **ESTIMATED TIME OF TRIAL:** | | 4-6 weeks |
| **WILL THE GOVERNMENT SEEK DETENTION IN THIS CASE:** | | No |
| **ARE THERE DETAINERS FROM OTHER JURISDICTIONS:** | | No |

## PENALTY SUMMARY
### 14-CR-27-F

| | |
|---|---|
| **DEFENDANT NAME:** | **LUCILLE KATHLEEN HILL** |
| **DATE:** | July 22, 2014 |
| **INTERPRETER NEEDED:** | No |
| **PLACE OF TRIAL:** | **Cheyenne** |
| **VICTIM:** | No |
| **SEAL CASE:** | No |
| **OFFENSE:** Ct. 1: | **18 U.S.C. § 371** (Conspiracy to Defraud the United States) |
| **PENALTIES:** | NMT 5 Years of Imprisonment $250,000 Fine 3 Years Supervised Release $100 Special Assessment |
| **AGENT:** | James Marcy, IRS-CID |
| **AUSA:** | L. Robert Murray |
| **ESTIMATED TIME OF TRIAL:** | 4-6 weeks |
| **WILL THE GOVERNMENT SEEK DETENTION IN THIS CASE:** | No |
| **ARE THERE DETAINERS FROM OTHER JURISDICTIONS:** | No |

## PENALTY SUMMARY
### 14-CR-27-F

| | | |
|---|---|---|
| **DEFENDANT NAME:** | | **STEPHANIE LENORE MACIEL** |
| **DATE:** | | July 22, 2014 |
| **INTERPRETER NEEDED:** | | No |
| **PLACE OF TRIAL:** | | **Cheyenne** |
| **VICTIM:** | | No |
| **SEAL CASE:** | | No |
| **OFFENSE:** | **Ct. 1:** | **18 U.S.C. § 371**<br>(Conspiracy to Defraud the United States) |
| **PENALTIES:** | | NMT 5 Years of Imprisonment<br>$250,000 Fine<br>3 Years Supervised Release<br>$100 Special Assessment |
| **OFFENSE:** | **Ct. 2:** | **18 U.S.C. § 1512(k)**<br>(Conspiracy to Obstruct Justice) |
| **PENALTIES:** | | NMT 20 Years of Imprisonment<br>$250,000 Fine<br>3 Years Supervised Release<br>$100 Special Assessment |
| **TOTAL:** | | NMT 25 Years of Imprisonment<br>$500,000 Fine<br>3 Years Supervised Release<br>$200 Special Assessment |
| **AGENT:** | | James Marcy, IRS-CID |
| **AUSA:** | | L. Robert Murray |
| **ESTIMATED TIME OF TRIAL:** | | 4-6 weeks |
| **WILL THE GOVERNMENT SEEK DETENTION IN THIS CASE:** | | No |
| **ARE THERE DETAINERS FROM OTHER JURISDICTIONS:** | | No |

## PENALTY SUMMARY
### 14-CR-27-F

| | |
|---|---|
| **DEFENDANT NAME:** | **GLORIA JEAN REEDER** |
| **DATE:** | July 22, 2014 |
| **INTERPRETER NEEDED:** | No |
| **PLACE OF TRIAL:** | **Cheyenne** |
| **VICTIM:** | No |
| **SEAL CASE:** | No |

**OFFENSE:**    Ct. 1:    **18 U.S.C. § 371**
(Conspiracy to Defraud the United States)

**PENALTIES:**

NMT 5 Years of Imprisonment
$250,000 Fine
3 Years Supervised Release
$100 Special Assessment

**OFFENSE:**    Ct. 2:    **18 U.S.C. § 1512(k)**
(Conspiracy to Obstruct Justice)

**PENALTIES:**

NMT 20 Years of Imprisonment
$250,000 Fine
3 Years Supervised Release
$100 Special Assessment

**TOTAL:**

NMT 25 Years of Imprisonment
$500,000 Fine
3 Years Supervised Release
$200 Special Assessment

| | |
|---|---|
| **AGENT:** | James Marcy, IRS-CID |
| **AUSA:** | L. Robert Murray |
| **ESTIMATED TIME OF TRIAL:** | 4-6 weeks |
| **WILL THE GOVERNMENT SEEK DETENTION IN THIS CASE:** | No |
| **ARE THERE DETAINERS FROM OTHER JURISDICTIONS:** | No |